# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## DROMGOOLE V. SMITH AND ALS.

### March 6th, 1884.

1. EXECUTORS AND ADMINISTRATORS—*Confederate currency—When scaled.* Confederate currency received by administrator during the late war should not be scaled as of the date of receipt, but until the end of the year should be allowed him to invest same.

2. IDEM—*Trustee—Settlement.*—Where trustee settles his accounts with *c. q. t.* in 1862, and after her death becomes her administrator and settled his accounts in 1863, showing balance against him in both capacities, after suit is brought against him in 1876 for that balance, he cannot set up that a bond not mentioned in those accounts had in life time of *c. q. t.* been assigned by him to her, which would have extinguished that balance.

3. IDEM—*Scaling in 1864.*—It is a matter of history, whereof judicial cognizance is taken, that all Confederate currency was in 1864 called in and scaled at two-thirds of its value, and administrator should be allowed credit accordingly.

4. IDEM—*War interest—Alien enemies.*—Where administrator during the late war held money payable to distributees living within the U. S. lines, he should not be charged with interest thereon during that period.

5. IDEM—*Confederate currency on hand.*—Where administrator claims credit for Confederate currency which belonged to the decedent's estate and perished on his hand, the *onus* rests on him to prove that he could not have invested it.

6. IDEM—*Expenses and compensations.*—Administrators are entitled to allowance for reasonable expenses and compensation, and where record does not shown such allowance, it cannot be presumed to have been made.

Appeal of Edward Droomgoole from decree of circuit court of Brunswick county, pronounced January 2d, 1880,

VOL. LXXVIII—84

in suit of Louisa E. Smith and others v. Edward Dromgoole, administrator of Elizabeth House, deceased, and als.

Opinion states the case.

*J. A. Jones, O. G. Kean,* for the appellant.

*G. S. & D. M. Bernard, Merritt & Lewis,* for the appellees.

LACY, J., delivered the opinion of the court.

Edward Dromgoole qualified as the administrator of Elizabeth House, dec'd, January, 1862. From 1847 to the year 1852, he had been her trustee. From the last date to her death in 1862, he acted as her agent, and had regular annual settlements with her, paying her the interest which accrued on the fund in his hands. In 1863 he settled before a commissioner of accounts an *ex parte* account of his transactions on her estate, charging himself with $663.30, which was transferred from the trust fund into the administration account, and the balance was ascertained and reported to be $1,638.08, on the 1st day of March, 1863. This account, so stated, was returned to court and approved and recorded, and so remained until 1876, when the appellees brought their suit against the said Dromgoole, as the next of kin and the heirs at law of Elizabeth House, seeking a recovery of the said sum of $1,638.08. On the 13th of December, 1877, the said Dromgoole answered, the two amended bills having been filed and the parties being then all before the court. He denied that he had collected all the bonds belonging to the estate, and claimed that the money which he had received was Confederate currency, much depreciated; and denied the accuracy of the said settled account, and set up several items of account anterior thereto. A reference was had to a commissioner, and upon

the coming in of his report, the defendant filed ten exceptions, and the complainants two, to the report.

The first exception of the defendant is waived, and the third and ninth were sustained by the circuit court, and it is not necessary to notice them here.

The second exception of the defendant is, because the commissioners scaled the Confederate money at the date of its receipt, instead of at the end of the year. 4th. Because the commissioner did not credit the administrator with the bond of Kirkland & Griffin, which is claimed to have been accepted by Mrs. House in her lifetime as part of the trust fund. 5th. Because the administrator refused to credit the defendant with items claimed to have been paid by the defendant in the lifetime of Mrs. House, and not included in the settled account of 1868, mentioned above. 6th. Because one-third was not deducted by the commissioner from the Confederate money, which was lost under the act of congress of 1863. 7th. Because the commissioner did not report that the heirs of Elizabeth House lived outside of the Confederate lines during the war. 8th. Because the commissioner did not report that the administrator still had the Confederate money unused, which had perished on his hands. 10th. Because the commissioner did not allow commissions on the trust fund transferred to the administration account.

The plaintiff's exceptions were : 1st. That the money was scaled at all as of any date, instead of charging the whole as gold, as to the collections of February, 1862, from sales of that date; and 2d, as to the collections of 1862 for debts contracted in 1861.

The circuit court overruled all the exceptions of the defendant, except the third and ninth, and decreed against the defendant, overruling the exceptions of the complainants also, and ordered the defendant, Dromgoole, to distribute the balance in his hands, as shown by the report (viz :

$1,866.05), among the distributees of the said Elizabeth
House, in the ratio of their respective rights, without as-
·certaining the distributees or the amounts due to them re-
·spectively. From this decree the defendant, Dromgoole,
applied for and obtained an appeal to this court.

As to the second exception—that the commissioner should
not have scaled the Confederate money as of the day it was
received—in the case of *Granberry* v. *Granberry*, 1 Wash.
246, this court said, upon this question, "Upon general
principles, such a rule would be unjust and improper when
the money was received in a state of rapid depreciation.
The executor may not be able to find a creditor or legatee
to whom he could pay the money on the day it was re-
ceived"; in that case, holding the executor liable in that
way, because he had so charged himself. In this case there
are no circumstances of that sort. The executor received
the money at a period when the war was upon the country.
The parties entitled to it lived outside the State and out-
side the Confederacy, within the lines of the United States'
military operations, as is stated and not denied, though the
commissioner's report does not state their residence. The
money was rapidly depreciating, and borrowers were not
easily found at such a period who were at the same time
capable of properly securing a trust fund, and the executor
was clearly entitled to a reasonable time to invest the
money, and until the end of the year could not be held to
be an unreasonable time. And the court erred in overru-
ling this exception.

As to the fourth exception, there seems to have been no
evidence to support the claim of the defendant that the
bond of Kirkland & Griffin had been accepted by Eliza-
beth House in her lifetime as part of the trust fund. In
the settled account of the trustee, in 1862, and in the set-
tled account of the administrator, no mention is made of
it, though it is claimed now to have been then a part of

the trust fund. It was not assigned nor in any way trans-- ferred so far as the paper shows, and although it was sued on as the property of the deceased years after these settlements, this was only after the obligors therein had become insolvent, and the averment in the answer concerning the same must be regarded as new matter. There is no evidence to prove or in any way support the claim, and the same was rightly disregarded and the exception properly overruled.

As to the fifth exception, there is evidence tending to prove the fact that these payments were made for Mrs. House, there having been annual settlements between the defendant and Mrs. House ; and the same not having been in any manner referred to in the *ex parte* settled accounts referred to above, it must be presumed against the executor, that he would not have charged himself with so large a sum which he did not owe ; for, if his charges are admitted in this regard and as to the Kirkland & Griffin bond, the face of the account is so changed as to extinguish the claim of the plaintiffs. And this exception was properly overruled.

As to the sixth exception, it is a matter of history that all the Confederate money in existence in 1864 was called in and scaled at two-thirds of its value. And the defendant was entitled to be credited by whatever loss he had thereby sustained as to any part or as to the whole sum. This exception should have been sustained.

As to the seventh exception, there does not appear to have been any evidence before the commissioner as to the residence of the heirs of Elizabeth House, and the said exception was properly overruled. But as it will be necessary to restate the account upon a future reference to a commissioner, testimony can be offered before the commissioner upon this subject, when, if it shall appear that the parties lived on opposite sides during the war, interest should not

be charged against the administrator during that period. 2 Barton's Chan. Pr. p. 717, citing the unreported case of *Brent* v. *Lenseney,* in this court; *Mc Veigh* v. *The Bank of the Old Dominion,* 26 Gratt. p. 202. The interest against the administrator should not have been calculated and charged against him until a reasonable period had been allowed for him to lend out the fund and thus make interest. It was, therefore, error to charge the administrator interest on the money collected by him from the day he received it.

The eighth exception was properly overruled, as there is no proof in the record that the money in the administrator's hands could not have been invested by him.

As to the tenth exception, it does not appear from the record whether any compensation was ever allowed this administrator on this trust fund, and it cannot be presumed against him that it has been. The statute provides that the commissioner shall, in stating and settling the accounts of a fiduciary, allow any reasonable expenses incurred by him as such, and also, except in cases where it is otherwise provided, a reasonable compensation in the form of a commission on receipts or otherwise. This exception should have been sustained.

The decree of the circuit court of Brunswick is erroneous for the reasons herein stated, and the same must be reversed and annulled, and this cause remanded to the said court to be there further proceeded in in accordance with the foregoing views, when any party should be allowed to introduce before the commissioner, to whom the same shall be referred for account and report, any evidence which he may desire to offer to support his case; and the cause to be there further proceeded in to a final decree therein.

DECREE REVERSED IN PART AND AFFIRMED IN PART.